**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NANA KYEAME, | : | |
| | : | **Civil Action No. 1:07-CV-1239** |
| Plaintiff, | : | |
| | : | |
| v. | : | **(Chief Judge Kane)** |
| | : | |
| NICHOLAS BUCHHEIT, | : | **(Magistrate Judge Carlson)** |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

## I.    Introduction

This matter comes before the Court on a referral from the district court, for the purpose of addressing a sanctions motion filed by the plaintiff. That sanctions motion cites defense counsel for two alleged infractions involving a claimed failure to participate in good faith in a mediation session, and allegedly misleading representations made at the time that the defense sought a stay of this litigation. As sanctions for these alleged lapses, the plaintiff seeks a panoply of remedies including: entry of a default judgment against the defendant; preclusion of certain claims; and an award of attorney's fees.

In this case we do not write upon a blank slate in addressing the issues presented by the plaintiff's motion. Quite the contrary, the district court has made a series of observations and findings regarding the conduct of this litigation prior to

referring this matter to us for our consideration. Some of these findings, in our view, now constitute the law of the case on the issue of whether potentially sanctionable conduct may have occurred here.

With this understanding of the law of the case, and this recognition of how the law of the case defines the scope of our task, we conclude that our role in this matter is currently limited to recommending an appropriate sanction for what in at least one instance the district court has already determined as the law of the case to have been a material and inaccurate representation in a pleading. Upon consideration of this issue, we recommend that the district court impose a nominal sanction at this time, without prejudice to renewal of attorney fees claims at the close of this litigation, if appropriate.

## II.    Statement of Facts and of the Case

The events which lead to this sanction dispute began on July 9, 2007, when the plaintiff filed this civil rights complaint. (Doc. 1.) Following the filing of the complaint, this case was selected for mandatory mediation pursuant to the mandatory mediation policy of the United States District Court for the Middle District of Pennsylvania. Accordingly, on November 28, 2007, this case was referred by the district court to mediation. (Doc. 11.)

After the parties filed a motion to extend the mediation time period, (Doc. 13), the mediation deadline was extended in this matter, and the case was scheduled for mediation on February 15, 2008. (Doc. 15.) As this mediation deadline approached, defense counsel consulted with representatives of the state agency involved in this case, the Pennsylvania State Police, and determined that this agency was not prepared to offer financial compensation to the plaintiff at this early stage of the litigation. On February 11, 2008, defense counsel conveyed this information to the mediator, reporting the limitations on the defendant's settlement authority four days prior to the scheduled mediation. (Doc. 28-2.)

This report then precipitated a series of events. The mediation was cancelled, and a telephonic case management conference was scheduled in this matter. (Docs. 15 and 16.) That conference was held on February 25, 2008. (Doc. 18.) The minute sheet of this conference reflects that the parties discussed the defendant's settlement posture, and indicates that the district court may have chided the defendant for its lack of flexibility at settlement. (Id.) However, that minute sheet does not contain any findings of misconduct by the district court.  Instead, the court indicated that this issue would be addressed in subsequent proceedings. (Id.)

In the wake of this conference, the district court set a discovery and pretrial schedule. (Doc. 19.) The plaintiff, in turn, filed a sanctions motion. (Doc. 17.) This

3

sanctions motion related to the aborted settlement conference, and inspired a series of filings. (Docs. 20, 21, 22, 23, 24, 25, 26, 27, and 28.) As briefing of this initial sanction motion drew to a close there was another development in this case, a development which triggered yet another round of mutual recriminations between parties, and further sanctions litigation.

These events began on May 8, 2008, when the defendant filed a motion to stay proceedings. (Docs. 29-31.) In this motion, defense counsel made the following factual representations regarding the military status of the defendant, Nicholas Buchheit: "Defendant is also a member of the Pennsylvania Army National Guard. *In that capacity, defendant was recently deployed to Iraq. . . .* The deployment order, . . . indicates a tour of duty lasting from April 30, 2008 until September 30, 2008."(Doc. 29, ¶¶2 and 3)(emphasis added.)

Relying upon this factual assertion, the district court entered an order on May 12, 2008, (Doc. 32), which provided in part as follows:

> [U]pon consideration of the motion of defendant Nicholas Buchheit to stay proceedings in this action, and good cause appearing therefor, it is hereby ORDERED that the motion is GRANTED. Defendant's counsel /shall provide the Court and plaintiff's counsel with any new information regarding the return of defendant from his military service. The proceedings in this action are stayed for the duration of defendant's military service and a period of ninety (90) days thereafter.

In fact, defense counsel's May 8, 2008 statement that "Defendant is also a member of the Pennsylvania Army National Guard. In that capacity, defendant was recently deployed to Iraq. . . .  The deployment order, . . .  indicates a tour of duty lasting from April 30, 2008, until September 30, 2008,"(Doc. 29, ¶¶2 and 3), was not accurate to the extent that it alleged that the defendant "was deployed to Iraq" in May 2008. This inaccuracy came to light in the course of an acrimonious exchange between counsel in the summer of 2008.

That exchange began on July 17, 2008, when plaintiff's counsel wrote defendant's counsel to inquire about the status of Buchheit's military service. (Doc. 33.) On July 21, 2008, defense counsel replied to plaintiff's counsel in a fashion which appeared to contradict the factual representations made by counsel to the district court in the motion to stay, asserting in part that: " my client is not expected to be back from Iraq until September 2009. *His unit has not actually even deployed yet*. Upon his return, I will move to lift the stay."(Id.) This assertion inspired a July 22, 2008, response from plaintiff's counsel which voiced distress at the apparently contradictory statements made by defense counsel, and expressed an intention to move to set aside the stay. (Id.

Having contributed to this controversy through counsel's initial choice of words when moving for this stay, defense counsel then regrettably replied to the

plaintiff's letter in an intemperate fashion on July 28, 2008, advising plaintiff's counsel that the "actual location of [Defendant's] service is irrelevant," threatening that if Plaintiff's counsel "insist[s] on filing the motion and [Defendant's counsel is] required to write a brief in response, please note that [she] will be keeping track of [her] time and will seek attorneys fees," and describing an unfortunate lapse in communication with her client, stating that she had no contact with Buchheit until mid-July when she learned that he had not deployed to Iraq. (Id.) In fact, it appears that Buchheit was not engaged in active military service from May through September of 2008, but only began that active service in September 2008. (Id.)

On April 22, 2009, plaintiff's counsel moved to lift this stay, citing in part the inaccurate and contradictory statements made by defense counsel regarding the precise terms, and timing, of Buchheit's military deployment. (Docs. 33 and 34.) The defendant responded to this motion, belatedly conceding some inaccuracies in its initial stay motion and filings, while arguing that those factual errors were harmless. (Docs. 35 and 36.)

The district court resolved this issue on December 23, 2009, when it entered an order lifting this stay. (Doc. 38.) In this order, the district court made specific factual findings relating to the conduct of defense counsel, stating, in pertinent part, as follows:

6

This case was stayed on May 12, 2008, pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. app. § 501, et seq., ("SCRA") based on Defendant's representation that he was deploying to Iraq for a tour of duty lasting from April 30, 2008 until September 30, 2008 (Doc. No. 29). Though Defendant does seem to have deployed to Iraq in September 2008, (Doc. No. 36-2), Plaintiff claims that the stay imposed between April 30, 2008 and September 2008 was the result of a bad faith misrepresentation by the Defendant and unwarranted (Doc. No. 34 at 11). Plaintiff argues that this misrepresentation was prejudicial because of delay it caused in resolution of the case and requests that the Court lift the stay, allow discovery proceed to the extent possible, and sanction the Defendant and his counsel. (Id. at 18.)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Defendant argues that the distinction between state and federal service was immaterial because an equivalent Pennsylvania statute, 51 Pa. C.S. § 7314, provided for a stay while Defendant was engaged in state service even if the SCRA did not. (Doc. No. 35 at 8.) Along this same line, the Court may also have considered a stay under its inherent power to economically manage the cases on its docket. See Landis v. North American Co., 299 U.S. 248, 254-255 (1936). The Court must reject the Defendant's argument, however. The Defendant did not request a stay under the Pennsylvania statute or pursuant to the Court's inherent discretion, but rather suggested that—on account of Defendant's deployment to Iraq—"the mandatory provisions of [the SCRA] require that this action be stayed." (Doc. Nos. 29, 31.) Additionally, under any approach, the actual circumstances of Defendant's military service would be material to the Court's consideration. See 51 Pa. C.S. § 7314 (providing that a stay is not warranted if the Court finds "the ability of . . . the defendant to conduct his defense is not materially affected by reason of his military service.").

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Because the initial grant of a stay was premised on incorrect representations made to the Court and the Defendant was due back from

his active duty in September 2009 (Doc. No. 35 at 2), the Court finds that the stay should be lifted at this time.

(Doc. 38.)

Having made these findings that defense counsel had made incorrect representations to the court on matters which were material to the issuance of the stay, the district court vacated that stay, while deferring further action on the plaintiff's various sanctions requests. (Doc. 38, p. 3, n. 1.) Several months later, plaintiff's counsel renewed their request for sanctions, (Doc. 40), an event which inspired the referral of this matter to the undersigned. (Doc. 41.)

This Court then requested supplemental briefing and submissions from the parties on this sanctions issue. (Doc. 46.) These submissions have been filed by the parties, (Docs. 48, 49, 50, 53, 55, 57, 59, and 62), and have been reviewed by the Court. The Court deferred ruling on this motion in order to afford the parties an opportunity to avoid further sanctions litigation by entering into substantive settlement discussions, (Doc. 71), but it has been reported that the parties do not wish to pursue such discussions. (Doc. 73.) Accordingly, this matter is now ripe for resolution.

Upon consideration of this matter, we find that the law of the case is that the district court has found that defense counsel made material, and incorrect, statements

in the motion for stay filed in this matter. Having made this finding,  we recommend that the district court impose a nominal sanction at this time for this conduct, without prejudice to renewal of attorney fees claims at the close of this litigation, if appropriate.

## III.   Discussion

### A.   Introduction

In this case, where we are called upon to examine a sanctions motions filed against the backdrop of prior district court rulings, two sets of legal tenets guide the exercise of our judgment and discretion. First, it is incumbent upon us to determine the state of the law of the case with respect to these sanctions questions, since the law of the case identifies what issues remain to be decided. Once the ambit of our discretion is defined by the law of the case, we must turn to an examination of the guiding legal precepts which govern sanctions litigation, in order to ensure that the exercise of discretion in this case comports with those basic principles of fairness in sanction matters. The principles which inform these two sets of legal guideposts are discussed separately below.

### B.   The Law of the Case Doctrine–Guiding Principles

At the outset, in addressing this sanctions matter, we note that we do not write upon a blank slate. Quite the contrary, extensive district court proceedings, spanning

two years, transpired before this matter was referred to us for resolution. These prior proceedings implicate a basic legal tenet, the law of the case doctrine. "Under the law of the case doctrine, once an issue is decided, it will not be relitigated in the same case, except in unusual circumstances. . . . . The purpose of this doctrine is to promote the 'judicial system's interest in finality and in efficient administration. <u>Todd & Co., Inc. v. S.E.C.</u>, 637 F.2d 154, 156 (3d Cir. 1980).'" <u>Hayman Cash Register Co. v. Sarokin</u> 669 F.2d 162, 165 (3d Cir. 1981). The contours of this settled doctrine were described by the United States Court of Appeals for the Third Circuit in the following terms:

> In <u>Arizona v. California</u>, 460 U.S. 605 (1983), the Supreme Court noted:
>
> > Unlike the more precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.
>
> <u>Id.</u> at 618 (citations omitted). The "[l]aw of the case rules have developed 'to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.' " <u>Casey v. Planned Parenthood of Se. Pa.</u>, 14 F.3d 848, 856 (3d Cir.1994) (quoting 18 Charles A. Wright, Arthur R. Miller, Edward Cooper, <u>Federal Practice and Procedure</u> § 4478 at 788 (2d ed.1981)).

In re Pharmacy Benefit Managers Antitrust Litigation, 582 F.3d 432, 439 (3d Cir. 2009)(reversing arbitration order in antitrust case on law-of-the-case grounds). It is clear that "[t]he ... doctrine does not restrict a court's power but rather governs its exercise of discretion." Id. (quoting,  Pub. Interest Research Group of NJ, Inc. v. Magnesium Elektron Inc., 123 F.3d 111, 116 (3d Cir.1997)) (citations omitted). In exercising that discretion, however, courts should "be loathe to [reverse prior rulings] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice." Id. ( quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)). In addition to that narrow class of cases where the prior ruling was manifestly unjust, the type of "extraordinary circumstances" that warrant a court's exercising its discretion in favor of reconsidering an issue decided earlier in the course of litigation typically exist only where (1) new evidence is available, or (2) a supervening new law has been announced. Id. ( citing, Pub. Interest Research Group of NJ, Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997)).

**C.    Legal Principles Guiding Sanctions Litigation**

In addition to the constraints defined by the law of the case doctrine, our exercise of discretion in this instance is also guided by settled case law describing the

responsibilities of the court when considering sanctions against parties. At the outset,

it is well-settled that a district court has the inherent power to sanction parties

appearing before it for refusing to comply with its orders and to control litigation

before it.  See, e.g., Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 242 (3d

Cir. 2007).  Indeed, the inherent power of the Court to act in this area has long been

recognized by the United States Supreme Court, which has held that:

> It has long been understood that "[c]ertain implied powers must
> necessarily result to our Courts of justice from the nature of their
> institution," powers "which cannot be dispensed with in a Court,
> because they are necessary to the exercise of all others." United States
> v. Hudson, 7 Cranch 32, 34, 3 L.Ed. 259 (1812); see also Roadway
> Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65
> L.Ed.2d 488 (1980) (citing Hudson ). For this reason, "Courts of justice
> are universally acknowledged to be vested, by their very creation, with
> power to impose silence, respect, and decorum, in their presence, and
> submission to their lawful mandates." Anderson v. Dunn, 6 Wheat. 204,
> 227, 5 L.Ed. 242 (1821); see also Ex parte Robinson, 19 Wall. 505, 510,
> 22 L.Ed. 205 (1874). These powers are "governed not by rule or statute
> but by the control necessarily vested in courts to manage their own
> affairs so as to achieve the orderly and expeditious disposition of cases."
> Link v. Wabash R. Co., 370 U.S. 626, 630-631, 82 S.Ct. 1386, 1388-
> 1389, 8 L.Ed.2d 734 (1962).

Chambers v. NASCO, Inc. 501 U.S. 32, 43 (1991).

Sanctions decisions rest in the sound discretion of the Court and, if a district

court awards sanctions pursuant to its inherent authority, such an award may only be

reviewed for abuse of discretion, which will be found only where "the court's

decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." In re Prudential Ins. Co. Am. Sales Practice Litig. Actions, 278 F.3d 175, 181 (3d Cir. 2002) (quoting In re Orthopedic Bone Screw Products Liability Litig., 193 F.3d 781, 795 (3d Cir. 1999)).   In addition to the court's inherent authority, Rule 16(f) of the Federal Rules of Civil Procedure also provides that upon a motion, or on its own motion, a court may issue sanctions if a party or its attorney:

> (A)   fails to appear at a scheduling or other pretrial conference;
>
> (B)   is substantially unprepared to participate – or does not participate in good faith – in the conference; or
>
> (C)   fails to obey a scheduling or other pretrial order.

Fed. R. Civ. P. 16(f); see also Tracinda Corp., 502 F.3d at 242 (observing that whereas sanctions imposed pursuant to court's inherent authority generally require finding of bad faith, Rule 16(f) contains no such requirement). Indeed,

> Relying on this Rule, [courts] have imposed sanctions based upon an attorney's failure to attend a settlement conference or abide by the order scheduling the conference. See Univ. of Pittsburgh v. Varian Med. Sys., Inc., 07-491, 2008 WL 1774115 (W.D.Pa. Apr.17, 2008) (Schwab, J.) (denying motion for reconsideration of sanctions imposed for failure to participate in settlement conference in good faith); Karhuta v. Boardwalk Regency Corp., 06-4902, 2007 WL 2825722, at *3 (E.D.Pa. Sept.27, 2007) (Perkin, M.J.) (sanctions imposed for failing to participate in settlement conference in good faith); Miller v. Unum Life Ins. Co. of America, 05-177, 2006 WL 30000962, at *1 (E.D.Pa. Oct.

13

19, 2006) (Hart, M.J.) (sanctions imposed for failure to attend court ordered settlement conference).

Stewart v. Moll, No. 07-1085,  2008 WL 2954737, *3 (E.D.Pa. July 31, 2008). Thus, in certain instances, Rule 16 authorizes imposition of sanctions where parties fail to comply with scheduling orders setting settlement conferences by failing to timely and properly file settlement memoranda, Grant v. Omni Health Care Systems of NJ, Inc., No. 08-306, 2009 WL 3151322 (D.N.J. Sept. 24, 2009); by failing to adequately prepare for such conferences, Univ. of Pittsburgh v. Varian Med. Sys., Inc., 07-491, 2008 WL 1774115 (W.D.Pa. Apr.17, 2008); or  where a party's failure to disclose its true settlement posture to the court in a timely fashion leads to the unnecessary scheduling of settlement conferences and proceedings. Karhuta v. Boardwalk Regency Corp., 06-4902, 2007 WL 2825722 (E.D.Pa. Sept.27, 2007). In such instances courts typically have only sanctioned defendants when the "Defendant did not notify the Court beforehand that a settlement conference at this time would be a futile act, thereby wasting the limited time, financial resources and energies of the Court and Plaintiff [at the settlement conference], " Karahuta v. Boardwalk Regency Corp. 2007 WL 2825722 at *4 (citations omitted) and have held that "Defendants, knowing that they did not possess any additional authority following the initial conference, should have notified the Court before the second conference of their

14

position." Id. at *6. In contrast, where a party's conduct consists of simply adopting a fixed, inflexible position in settlement talks, and that fixed position is timely communicated to others, sanctions are not appropriate since sanctions cannot be used as a vehicle for pressing parties to surrender honestly held convictions on the merits of litigation. See  Avance v. Kerr-McGee Chemical, LLC., No. 04-206, 2006 WL 4402359 (W.D. Tex. March 21, 2006)(no sanction imposed where defense counsel timely notified plaintiff's attorney of limited settlement authority).

Yet while this Court doubtless has the discretion to order imposition of sanctions in appropriate cases, the exercise of this discretion is guided by certain basic principles. Foremost among these principles is the tenet that sanctions should always be narrowly tailored to meet the misconduct, and should entail no greater punishment than is reasonably necessary to address the specific wrongdoing that confronts the court. See, Klein v. Stahl, GMBH & Co., Maschinefabrik, 185 F.3d 98 (3d. Cir. 1999).This basic, but pivotal, aspect of the exercise of discretion in this area, has been voiced in many ways.  Thus, it is well established that, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Chambers v. NASCO, Inc. 501  U.S. at 44-45 (citation omitted). Therefore, in exercising this authority we are cautioned that:

[A] district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified. In exercising its discretion under its inherent powers, the court should be guided by the same considerations that guide it in the imposition of sanctions under the Federal Rules. First, the court must consider the conduct at issue and explain why the conduct warrants sanction.

Republic of Philippines v. Westinghouse Elec. Corp. 43 F.3d at 74.

Moreover:

[H]aving evaluated the conduct at issue, the district court must specifically consider the range of permissible sanctions and explain why less severe alternatives to the sanction imposed are inadequate or inappropriate. Although the court need not "exhaust all other sanctioning mechanisms prior to resorting to its inherent power" (Landon v. Hunt, 938 F.2d at 450, 454 (3d Cir.1991)), the court must explain why it has chosen any particular sanction from the range of alternatives it has identified. See Poulis, 747 F.2d at 868 (sanctions under Fed. R. Civ. P. 16 and 37).

Id.

Therefore, when applying these guiding principles, and imposing the least severe sanction the court may, in the exercise of its discretion, elect to simply impose a nominal monetary sanction on a party whose conduct may warrant some penalty. See Skinner v. E.I. Du Pont De Nemours and Co., No. 07-384, 2009 WL 783329 (D.Del. March 25, 2009)(imposing nominal sanctions).

In addition, in a case such as this, where the proposed sanctions sought by a plaintiff include entry of a default judgment, or preclusion of claims, other legal considerations guide the exercise of the court's discretion.  Decisions regarding dismissal of actions, entry of default judgments, or preclusion of claims as sanctions rest in the sound discretion of the Court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted).  That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in imposing sanctions which affect the substantive outcome of litigation], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.With these basic principles in mind we then turn to the Plaintiff's sanctions motion.

**D.** **The Law of the Case Doctrine Compels a Finding of Inappropriate Conduct With Respect to the Filing of an Inaccurate Motion for Stay, But the Proper Exercise of Discretion Only Calls for a Nominal Sanctions at This Time**

        **1.** **The Law of the Case Doctrine Compels a Finding That the Defendant's Motion to Stay Was Incorrect in a Material Way**

In this case, we find at the outset that, with respect to the inaccurate statements made by defense counsel at the time the defendant filed his May 8, 2008, motion to stay proceedings, that the law of the case doctrine compels a finding that this conduct fell below the standards expected of counsel. At the outset, we note that the initial filing contained what was, undoubtedly a factual error, when it unequivocally asserted that "*defendant was recently deployed to Iraq.* . . . The deployment order, . . . indicates a tour of duty lasting from April 30, 2008, until September 30, 2008."(Doc. 29, ¶¶2 and 3)(emphasis added.) This statement was not accurate. In fact, Buchheit's deployment did not occur until September 2008, a fact which defense counsel fully recognized by mid-July 2008. Thus, the error in this pleading was acknowledged by counsel in July 2008, but this error was not brought to the attention of the district court for another nine months, until April 2009, when the plaintiff's counsel disclosed this incorrect information in a motion to vacate this stay.

18

While the parties have argued whether this miscommunication was material to the district court's stay decision, since the defendant might have been entitled to a stay on other grounds, or at other times, we conclude that the law of the case compels us to reject this argument since the district court has already plainly spoken on this issue and ruled that "the actual circumstances of Defendant's military service would be material to the Court's consideration [of the stay request]." (Doc. 38.) Thus, under the law of the case doctrine, we conclude that the district court has found that materially inaccurate representations were made by defense counsel in connection with this motion to stay. We further find that none of the "extraordinary circumstances" that warrant a departure form the law of the case doctrine exist here. Indeed, neither of the recognized exceptions to the law of the case doctrine–(1) the discovery of new evidence or (2) a supervening new law, Pub. Interest Research Group of NJ, Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 (3d Cir. 1997), has any application to this case.

While we conclude that the law of the case doctrine compels a finding of inappropriate conduct in this specific regard[1], we further find that the district court

_____

[1]We emphasize that our finding of sanctionable misconduct in this case, and our sanctions recommendation, is specifically premised upon what is our understanding of the law of the case here. We invite the parties to seek re-examination of this issue by the district court, if they so choose, since the district court is uniquely poised to determine whether its prior observations constituted the

made no similar rulings with respect to the defendant's earlier alleged failure to participate in mediation in February of 2008. In particular, while it seems that the Court may have chided the defense for their inflexible posture at this mediation, we note that no orders of the district court embody specific findings of improper conduct on this score.

Furthermore, we conclude that defense counsel notified the mediator on February 11, 2008–four days prior to the scheduled mediation–of the defendant's position as it related to a financial settlement of these claims. While we always encourage the greatest degree of transparency between parties at the earliest stages of litigation, we find that this four days' notice avoided the evil condemned by those cases which have imposed sanctions on litigants in this setting; namely, the danger that the "Defendant *did not notify the Court beforehand* that a settlement conference at this time would be a futile act, thereby wasting the limited time, financial resources and energies of the Court and Plaintiff [at the settlement conference], " Karahuta v. Boardwalk Regency Corp. 2007 WL 2825722 at *4(citations omitted)(emphasis added.) Thus, while the categorical refusal to consider a financial settlement in this

---

law of the case. Should the district court determine that it had not found as the law of the case that this conduct was material and inappropriate, then the court may well wish to re-consider whether any sanction, beyond the admonitions previously imposed, is necessary here.

case may prove to be short-sighted and unwise, it does not constitute sanctionable misconduct. Therefore, it is recommended that no sanctions be considered against the defendant as a result of this particular episode. See Avance v. Kerr-McGee Chemical, LLC., No. 04-206, 2006 WL 4402359 (W.D. Tex. March 21, 2006)(no sanction imposed where defense counsel timely notified plaintiff's attorney of limited settlement authority).

### 2. Entry of a Default or Issue Preclusion Are Not Appropriate Sanctions Here

While we find that the law of the case is that counsel erred by filing an inaccurate pleading, and by failing to timely correct those inaccuracies, it is recommended that this Court decline the plaintiff's invitation for entry of a default judgment or issue preclusion as a sanction for this shortcoming. As we have observed, decisions regarding whether to impose severe sanctions that resolve the merits of a lawsuit are governed by certain factors, commonly referred to as Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case as a sanction], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which

entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. <u>Poulis v. State Farm Fire and Cas. Co.</u>, 747 F.2d 863, 868 (3d Cir.1984).

<u>Emerson</u>, 296 F.3d at 190.

In this case, an assessment of these <u>Poulis</u> factors mitigates strongly against imposing a severe sanction that may alter the outcome of this case on its merits. At the outset, taking into account the first <u>Poulis</u> factor– the extent of the party's personal responsibility–there is no indication that the defendant, Nicholas Buchheit, was personally responsible for the inaccuracies in the pleadings filed in this case. At most, it appears that those inaccuracies may have sprung from miscommunication between Buchheit and his counsel. In this setting, where Buchheit personally bears no culpability for the conduct at issue, imposing a sanction that adversely affects Buchheit's personal rights and interests would be inappropriate.

While the second <u>Poulis</u> factor–the prejudice to the adversary–clearly has some relevance here, that relevance can also be clearly defined. The misstatements of defense counsel did not deny Kyeame his day in court. Instead, at most, these misstatements delayed the resolution of this matter by some months. While this delay had been, justly, condemned by the district court in its order vacating the stay in this case, the district court has also taken steps to reach the merits of these claims

promptly. Since Kyeame has not been denied an opportunity to litigate these claims on their merits, the prejudice experienced by Kyeame does not deny the plaintiff a resolution of the merits of his case and should not compel a ruling which would now effectively deny Buchheit his right to his day in court.

The third Poulis factor–the party's history of dilatoriness–is not in our judgment implicated in any compelling way in this case. Indeed, in this regard we note that after the inaccuracies in the defendant's initial stay motion became apparent in July 2008, neither party brought these inaccuracies to the court's attention for another nine months, until April, 2009.

The fourth Poulis factor cautions us to consider whether the conduct of the party or the attorney was willful or in bad faith. In this regard, "[g]enerally, '[w]illfulness involves intentional or self-serving behavior.' . . . If the conduct is merely negligent or inadvertent, we will not call the conduct 'contumacious.' " Briscoe v. Klaus,  538 F.3d 252, 262 (3d Cir. 2008). Thus, it has been held that willfulness involves "strategic," "intentional or self-serving behavior," and not mere negligence.  Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir.1994). In this case, while defense counsel's misstatements were troubling, we do not discern the type of strategic, self-serving, behavior in this conduct that

would readily support a finding of willfulness warranting sanctions that might alter the substantive outcome of this litigation.

Examining the fifth <u>Poulis</u> factor–the effectiveness of sanctions other than dismissal–we find that there are other, lesser sanctions that are available here. Therefore, this consideration strongly suggests that entry of a default judgment or some form of issue preclusion would not be the proper course to follow in this case.

Finally, as to the sixth <u>Poulis</u> factor–the meritoriousness of the claim or defense–we are not in a position to address the merits of any claim or defense, but note that the merits of these claims and defenses are set for prompt resolution by the district court. The scheduling of this matter for a trial on its merits, suggests to us that the case should, therefore, be permitted to proceed to a resolution on its merits, rather than through sanctions litigation.

Thus, a dispassionate assessment of the <u>Poulis</u> factors leads us to conclude that entry of a default judgment or preclusion of defenses would not be appropriate here. Accordingly, we recommend that the Court decline any invitation to impose such sanctions in this case.

## 2.      A Nominal Monetary Sanction is Appropriate Here

In the alternative, the plaintiff has sought imposition of sanctions in the form of attorney's fees. While some consideration such attorney fee sanctions may be warranted here, we remain mindful of the fact that in imposing sanctions, the Court may only impose a sanction that represents "the minimum that will serve to adequately deter the undesirable behavior" that precipitated the sanction. Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 1945 (3d Cir. 1988) (citation omitted). Moreover, when considering the appropriate course to follow in this case, we also recognize that the plaintiff may have a full opportunity to pursue attorney's fees in a comprehensive way in the very near future at the close of this litigation, which is set for trial in August 2011. Since this upcoming trial may further define, and perhaps expand, the scope of the plaintiff's entitlement to attorney fees, it is recommended that the Court decline any assessment of attorney fees as sanction at this time, without prejudice to revisiting this issue at the request of plaintiff's counsel, at the close of the litigation.

Thus, taking all of these considerations into account, and given the state of the law of the case, we believe that "the minimum [sanction] that will serve to adequately deter the undesirable behavior" that precipitated the sanction,  Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988), is a nominal

award of attorneys' fees in the amount of $300, without prejudice to the Plaintiff seeking full reimbursement of these attorney fees at the close of these proceedings, if any award of such fees is appropriate at that time.

## III.   <u>Recommendation</u>

Accordingly, in accordance with the law of the case, and for the foregoing reasons, IT IS RECOMMENDED THAT plaintiff's motion for sanctions be GRANTED, in part, and DENIED in part, and the defendant be ORDERED to pay attorney's fees of $300.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall

witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 5th day of July, 2011.

_**S/Martin C. Carlson**_
Martin C. Carlson

United States Magistrate Judge